IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHANIE MARABLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 24-CV-2494-DWD |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Stephanie Marable brings a medical malpractice claim under the Federal Tort Claims Act ("FTCA"), alleging the United States, through its deemed employees Brandy Holthaus, NP-C ("NP Holthaus"), Anne Nash, M.D. ("Dr. Nash"), and Southern Illinois Healthcare Foundation ("SIHF")[1], deviated from the standard of care by, among other things, failing to timely diagnose her breast cancer. Presently before the Court is the United States' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) alleging that the Department of Health and Human Services received the administrative tort claim more than two years after the date on which the claim accrued. For the reasons set forth below, the motion (Doc. 9) is **DENIED**.

---

[1] Plaintiff's Complaint refers to both "Southern Illinois Healthcare Foundation, Inc." and to "SIHF." (Doc. 1). The United States briefing notes, for purposes of clarification, that although "Southern Illinois Healthcare Foundation, Inc." is the corporate name, since at least 2019, the corporation has done business as "SIHF Healthcare." (Doc. 9, pg. 2 n. 1).

I.     BACKGROUND

Marable was a patient of NP Holthaus at SIHF's Belleville clinic from approximately 2015 through 2022. (Doc. 1, ¶ 15). During that time, Dr. Nash was the supervising physician, responsible for the oversight, training, and supervision of nurse practitioners, including NP Holthaus. Beginning in 2020, during her annual visits, Marable reported a palpable visible lump on her left breast to NP Holthaus. (Doc. 1, ¶¶ 15-39). NP Holthaus ordered routine screening mammograms, told Marable the lump was noncancerous, and attributable to calcifications. (*Id.*). Np Holthaus further indicated the lump did not require further follow up. (*Id.*). On January 27, 2022, at Marable's insistence, NP Holthaus ordered additional testing. (Doc. 1, ¶¶ 39-44).

After completing additional testing, on March 29, 2022, Marable "was informed for the first time by an oncologist that the breast lump was positive for invasive lobular carcinoma." (Doc. 1, ¶ 45). The Complaint does not provide any additional detail regarding what Marable was told in relation to her condition and diagnosis on that day.

On May 5, 2022, Marable underwent a lumpectomy of the left breast along with sentinel lymph node biopsy. (Doc. 1, ¶ 46). On May 24, 2022, Marable underwent axillary lymph node dissection. (Doc. 1, ¶ 47). Five out of fourteen lymph nodes were positive for cancer. (*Id*). The Complaint does not specify when Marable was informed about the results of the of the lumpectomy, sentinel lymph node biopsy, or axillary lymph node dissection. The Complaint, however, does allege that in June 2022, following additional scans and testing, "Marable's diagnosis of cancer of the left breast with metastasis to the bones was confirmed." (Doc. 1, ¶ 48). Additionally, the Complaint indicates that, on

August 15, 2022, Marable was diagnosed with Stage IV lobular carcinoma of the left breast, a more advanced stage of breast cancer requiring extensive medical and surgical treatment and for which there is no cure. (Doc. 1, ¶ 49).

On May 4, 2023, Marabel presented an administrative tort claim to the Illinois Department of Public Health Services and SIHF via Certified U.S. Mail. (Doc. 10-2).[2] The claim was not presented to the United States Department of Health and Human Services ("HHS") at that time. The claim lists Marable's date of injury as June 22, 2022 - the date on which "a bone biopsy confirmed Claimant's diagnosis of Stage IV lobular carcinoma of the left breast with metastasis to various bones throughout her body." (Doc. 10-2, pgs. 1, 2). It further states, "Claimant's cancer is now incurable and her life expectancy is significantly diminished due to the delayed diagnosis." (Doc. 10-2, pg. 2).

On January 18, 2024, Plaintiff sued NP Holthaus, SIHF, and Dr. Nash, in Illinois state court. *See Marable*, No. 24-cv-1279-JPG, at Doc. 1-1 (Ex. 1, state court complaint, No. 24-LA-0098 (St. Clair County, Ill.)). (Doc. 1 ¶ 3).[3]

On March 26, 2024, the United States filed an appearance in the state court action informing the court of their investigation into the status of the individual employees as covered federal employees. (Doc. 1 ¶ 4). That same day, after speaking with the

---

[2] Marable's Response attaches the tort claim presented to the Illinois Department of Public Health and the certified mail receipt. (Doc. 10-2). These additional facts are consistent with the Complaint's allegations and are properly considered by the Court on a motion to dismiss. *Phillips v. The Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). Additionally, the certified mail receipt is properly subject to judicial notice and may be considered by the Court at this stage of the litigation. *See Williamson v. Curran,* 714 F.3d 432, 436 (7th Cir. 2013).

[3] The Court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir.1994); *see also, Opoka v. INS,* 94 F.3d 392, 394 (7th Cir.1996) (recognizing that proceedings in other courts, both inside and outside the federal system, may be judicially noticed); Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure,* Civil 2d § 1364 at 475–479 (2nd ed.1990).

Registered Agent of SIHF, Marable's counsel learned that her administrative claim was not filed with the proper federal agency. (Doc. 10, pg. 3). Accordingly, on March 26, 2024, Marable's counsel mailed Marable's administrative claim to the HHS via certified priority mail through the United States Postal Service ("USPS"). (Doc. 10-4).[4] The certified priority mail receipt indicates that the *expected* delivery date was March 29, 2024. (*Id.*). However, the certified priority mail containing Plaintiff's administrative claim was not delivered until April 1, 2024. (Doc. 10-5; Doc. 1 ¶ 5).

On May 15, 2024, in accordance with the Public Health Services Act ("PHSA") (42 U.S.C. § 233(c)), the United States removed Plaintiff's suit to federal district court. *See Marable v. So. Ill. Healthcare Found.*, et al., No. 24-cv-1279-JPG (S.D. Ill.) (Docs. 1, 3). All three defendants were confirmed as "deemed" employees of the Public Health Service ("PHS") acting within the scope of their employment at the time of Marable's alleged injuries. *Id.* Accordingly, the United States was substituted as the defendant. (*Id.*). On August 6, 2024, the district court dismissed Marable's suit without prejudice for failure to exhaust administrative remedies. (*Id.* at Doc. 17).

On October 9, 2024, the HHS issued a notice of final determination and denied Marable administrative claim (Doc. 10-6). Thereafter, on November 15, 2024, Marable filed the instant action.

---

[4] These additional facts are consistent with the Complaint's allegations and are properly considered by the Court on a motion to dismiss. *Phillips v. The Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). Additionally, the certified mail receipt is properly subject to judicial notice and may be considered by the Court at this stage of the litigation. *See Williamson v. Curran,* 714 F.3d 432, 436 (7th Cir. 2013).

4

## II. LEGAL STANDARD

A Rule 12(b)(6) motion attacks the allegations within the four corners of the complaint. When considering a motion to dismiss for failure to state a claim, courts "take all the factual allegations in the complaint as true," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and draw all reasonable inferences in the plaintiff's favor, *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). "Ordinarily, when adjudicating a motion to dismiss under Rule 12(b)(6), a district court is limited to the allegations in the complaint." *Fin. Fiduciaries, LLC v. Gannett Co., Inc.*, 46 F.4th 654, 663 (7th Cir. 2022) (citing *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)). However, as is relevant here, a court also may consider "information that is properly subject to judicial notice," *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013), as well as additional facts offered by a plaintiff in opposing a motion to dismiss "so long as those facts are consistent with the pleadings," *Phillips v. The Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks and citation omitted). "Plaintiffs may augment the allegations of the complaint in opposing a motion to dismiss, but they cannot contradict it." *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 779 (N.D. Ill. 2016), *aff'd sub nom. Atlas IP, LLC v. Commonwealth Edison Co.*, 686 F. App'x 921 (Fed. Cir. 2017).

A statute of limitations defense is an affirmative defense; therefore, a complaint does not need to anticipate or plead against it. *See Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). However, dismissal under Rule 12(b)(6) based on a statute of limitations defense may be "appropriate when the plaintiff effectively pleads

5

herself out of court by alleging facts that are sufficient to establish the defense." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006).

## III. RELEVANT STATUTES

Four statutory regimes are relevant for resolution of the current motion.

1. *Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., ("FTCA")*

Generally, the United States is entitled to sovereign immunity unless it has expressly consented to suit. *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). The FTCA waives this immunity, allowing claims against the United States "for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). However, the FTCA requires plaintiffs to present their claim to the appropriate federal agency within two years of accrual, or the claim is time-barred. 28 U.S.C. §§ 2401(b), 2675(a). This statute of limitations is not jurisdictional and subject to equitable tolling. *Wong*, 575 U.S. at 407–12, 135 S.Ct. 1625.

2. *Public Health Services Act, 42 U.S.C. § 233 ("PHSA")*

The PHSA "grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." *Evans v. United States*, 132 F.4th 473 (7th Cir. 2025) (quoting *Hui v. Castaneda*, 559 U.S. 799, 806, 130 S.Ct. 1845, 176 L.Ed.2d 703 (2010)). Concurrently, the PHSA allows a plaintiff to sue the United States for "personal injury, including death, resulting from the performance of medical,

6

surgical, dental, or related functions," caused by PHS officers or employees. 42 U.S.C. § 233(a). When a plaintiff files suit against a PHS officer or employee acting within the scope of his employment, that proceeding must be removed to federal court. 42 U.S.C. § 233(c).

3. *Federally Supported Health Centers Assistance Act, 42 U.S.C. § 233(g) ("FSHCAA")*

The FSHCAA, enacted in 1992 as an amendment to the PHSA, addresses concerns about malpractice premiums for federally funded health centers. *See* Federally Supported Health Centers Assistance Act, Pub. L. No. 102-501, 106 Stat. 3268 (1992); 42 U.S.C. § 233(G). Under the FSHCAA, entities receiving federal funds under certain grant programs, as well as their officers, employees, and contractors, are "deemed" PHS entities or employees, thus falling within the liability limitations contained in § 233(a). 42 U.S.C. § 254(b). When a plaintiff sues a "deemed" PHS entity or employee acting within the scope of employment, that proceeding must be removed to federal court with the United States substituting itself as a defendant. 42 U.S.C. § 233(c).

Here, the United States removed Marable's state court suit against SIHF, Dr. Nash, and NP Holthaus, who are deemed PHS entities or employees, to federal court and substituted itself as a defendant under § 233(c).

4. *The Westfall Act, 28 U.S.C. § 2679(d)*

The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, amended the FTCA. *See* Pub. L. No. 100-694, 102 Stat. 4563 (1988). Relevant here, section 6 of the Westfall Act amended 28 U.S.C. § 2679(d) to provide that a claim is deemed timely if: (1) the plaintiff filed a civil action within the

7

FTCA's two-year limitations period; (2) the action was dismissed for failure to present the claim to the appropriate federal agency; and (3) the plaintiff presented the claim to the appropriate agency within 60 days after dismissal. 28 U.S.C. § 2679(d)(5).

### IV. PARTIES' ARGUMENTS

The United States argues as follows: SIHF is a deemed PHS entity and Dr. Nash and NP Holthaus are deemed PHS employees. As such, Marable's exclusive remedy is the FTCA. Marable's cause of action accrued on March 29, 2022 – the date on which she was told, for the first time, that the breast lump was positive for invasive lobular carcinoma. As such, Marable had to present her claims to the HHS by March 29, 2024 – two years after accrual. Because she did not present her claim to HHS until April 1, 2024,[5] her claims are untimely. The United States also contends that the Westfall Act's savings clause, 28 U.S.C. § 2679(d)(5), does not extend the FTCA's two-year limitations period to an action where, as here, the United States substituted itself as a defendant and removed the case to federal court under § 233(c). Finally, the United States contends that equitable tolling does not apply.

In her Complaint, Marable alleges that her claim accrued "on or about" March 29, 2022. Marable's response to the Motion does not raise any argument as to the date of

---

[5] "[A] claim shall be deemed to have been presented when a Federal agency *receives* from a claimant ... an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident[.]" 28 C.F.R. § 14.2 (emphasis added). Marable contends her claim was presented to HHS on April 1, 2024, the date USPS indicates the certified priority mail containing her claim was delivered. The United States claims, without support, that the HHS received the claim on April 3, 2024. The United States' assertion, however, is not appropriately considered by the Court at this stage of the litigation. Further, the United States that, for purposes of this motion, it concedes that the claim was presented on April 1, 2024 because the distinction between April 1 and April 3 is not material.

accrual. Instead, Marable's briefing focuses on the Westfall Act's savings clause and equitable tolling, arguing that either the Westfall Act or equitable tolling renders her claim timely.

## V.    *EVANS V. UNITED STATES*

After Marable filed her opposition to the Motion to Dismiss, the Seventh Circuit issued its decision in *Evans v. United States,* 132 F.4th 473 (7th Cir. 2025). In *Evans*, the plaintiff underwent a hysterectomy and was diagnosed with a ureteral injury on August 14, 2019. She filed a negligence suit in state court against the surgeon and associated medical entities. The United States substituted itself as the defendant under 42 U.S.C. § 233(c), as the surgeon was a deemed PHS employee at a federally funded clinic. The case was removed to federal court and dismissed for failure to exhaust administrative remedies. The plaintiff then presented her claim to the HHS. However, she presented her claim after expiration of the FTCA's two-year statute of limitations. The United States moved to dismiss the plaintiff's subsequent FTCA suit, arguing it was time-barred under 28 U.S.C. § 2401(b). Plaintiff invoked the Westfall Act's savings clause, claiming her state court filing and post-dismissal presentment were timely under § 2679(d)(5). The Seventh Circuit affirmed the district court's dismissal, holding that the Westfall Act's savings clause does not apply when the United States is substituted under the PHSA (§233(c)) rather than the FTCA (§ 2679(d)). The Appellate Court reasoned that the Westfall Act's savings provision explicitly applies to cases where the United States is substituted "under this subsection" (§ 2679(d)), referring to FTCA substitutions for federal employees generally. The PHSA, as amended by the FSHCAA, 42 U.S.C. § 233, provides a separate

9

mechanism for deeming certain health center employees as federal employees (42 U.S.C. § 233(g)), with substitution under § 233(c), which is not cross-referenced in § 2679(d)(5).

## VI. DISCUSSION

Marable presented her administrative claim to HHS no earlier than April 1, 2024. Thus, her FTCA claim is timely only if it accrued on or after April 1, 2024, unless the Westfall Act's savings provision or equitable tolling apply. *See* 28 U.S.C. § 2401(b). Because this case was removed pursuant to 42 U.S.C. § 233(c), the Seventh Circuit's recent ruling in *Evans v. United* States, 132 F.4th 473 (7th Cir. 2025) renders the Westfall Act's savings provision inapplicable. Accordingly, unless the claim accrued on or after April 1, 2022 or equitable tolling applies, the Complaint must be dismissed.

The Court first addresses the date of accrual. The United States argues for dismissal, asserting the claim accrued on March 29, 2022. First, it points to the Complaint's allegation as to the date of accrual. Specifically, in the Complaint, Marable alleges she is bringing a claim "for money damages, accruing on or about March 29, 2022…" (Doc. 1 ¶ 1). The United States contends this allegation necessarily establishes that a presentment date of April 1, 2024 is three days too late. But alleging that the claim accrued "on or about" March 29, 2022 reflects an approximate timeframe, not a fixed date.[6] The allegation reveals only that Marable's claim *may* be time-barred. Liberally construed in Marable's favor, the allegation permits an accrual date within the statute of

---

[6] *See* e.g., Black's Law Dictionary 982 (rev. 5th ed. 1979) ("A phrase used in reciting the date of an occurrence … to escape the necessity of being bound by the statement of an exact date, …; approximately; about; without substantial variance from; near.").

limitations. As such, dismissal premised on the March 29, 2022 allegation is inappropriate.

Second, the United States contends that the claim necessarily accrued on March 29, 2022, when Marable was initially diagnosed with breast cancer, because a reasonably diligent person, aware of a previously dismissed breast lump, would suspect malpractice upon receiving such a diagnosis.

Under the FTCA, a claim accrues at the earlier of: (1) when the plaintiff has actual knowledge that a government act or omission may have caused their injury (subjective test), or (2) when the plaintiff has "information that would prompt a reasonable person to inquire further into a potential government-related cause of the injury" (objective test). *E.Y. ex rel. Wallace v. United States*, 758 F.3d 861, 865-66 (7th Cir. 2014). "In other words, '[a] plaintiff's claim accrues the first time the plaintiff knew, or a reasonably diligent person in the plaintiff's position, reacting to any suspicious circumstances of which he or she might have been aware, would have discovered that an act or omission attributable to the government could have caused his or her injury.'" *P.W. by Woodson v. United States*, 990 F.3d 515, 519–20 (7th Cir. 2021) (quoting *Arroyo v. United States*, 656 F.3d 663, 669 (7th Cir. 2011)). *See also United States v. Kubrick*, 444 U.S. 111, 122-23 (1979) (Accrual occurs when the plaintiff knows, or should have known, of *both* the injury and its probable government-related cause.). Accrual of the claim, however, does not await knowledge of the full extent or severity of the injury, *Goodhand v. United States*, 40 F.3d 209 (7th Cir. 1994) ("The statute of limitations begins to run upon the discovery of the injury, even if the full extent of the injury is not discovered until much later."), nor does it await

awareness by the plaintiff that "the acts inflicting the injury" amount to medical malpractice or negligence. *Massey v. United States*, 312 F.3d 272, 277 (7th Cir. 2002) (citing *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)).

The accrual analysis has been "further refined for cases involving failure to warn, diagnose or treat[,]" as compared to those involving an affirmative act of treatment. *Massey v. United States,* 312 F.3d 272, 279 (7th Cir. 2002). In such cases, "the progression of the disease, rather than the disease itself, [is] the injury." *Id.* citing *Augustine v. United States,* 704 F.2d 1074, 1078 (9th Cir.1983). *See also Green v. United States,* 765 F.2d 105, 108 ("the injury is not the mere undetected existence of the medical problem, but rather, is 'the *development* of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment.'") (quoting *Augustine*, 704 F.2d at 1078). Thus, where a medical malpractice claim arises from the failure to diagnose or treat a patient, "it is only when the patient becomes aware or through the exercise of reasonable diligence should have become aware of the development of a pre-existing problem into a more serious condition that his cause of action can be said to have accrued…" *Green*, 765 F.2d at 108-09 quoting *Augustine*, 704 F.2d at 1078.

In medical malpractice cases involving the failure to treat or diagnose, the assessment of when a patient knows or reasonably should know of both an injury's existence and its government related cause is often a fact-intensive inquiry. *See* e.g., *Drazan v. United States, 762 F.2d 56, 60 (7th Cir. 1985)* (on the limited record before the court, widow's cause of action did not *necessarily* accrue when her husband died of lung

12

cancer, reversing dismissal, and remanding for further development of the record). The same is true here.

According to the Complaint, on March 29, 2022, Marable "was informed for the first time by an oncologist that the breast lump was positive for invasive lobular carcinoma." (Doc. 1, ¶ 45). The United States argues that Marable's claim accrued on this date, asserting that a reasonably diligent person, aware of the prior dismissal of her breast lump as noncancerous, would have suspected malpractice upon receiving the cancer diagnosis. However, under the objective test, accrual requires information that would prompt a reasonable person to inquire into a potential government-related cause of the injury. The complaint alleges only that Marable was informed of her diagnosis on March 29, 2022, without specifying what she was told about the progression of her condition or its potential connection to prior medical care (Doc. 1, ¶ 45). In failure-to-diagnose cases, the injury is not the mere existence of the underlying condition (here, the breast lump or cancer), but its progression into a more serious state due to the failure to diagnose or treat. Without details about when Marable became aware, or should have become aware, that her cancer had worsened due to the delay in diagnosis, it is plausible that a layperson, particularly one without medical expertise who relied on assurances that the lump was benign, would not immediately suspect upon initially receiving a cancer diagnosis that the government's failure caused progression. Similarly, under the subjective test, the complaint does not establish that Marable had actual knowledge on March 29, 2022, that her cancer's progression resulted from the government's failure to diagnose or treat her condition earlier.

The United States may contend that Marable's awareness of the prior dismissal of her lump, combined with the diagnosis, triggered a duty to inquire further. However, a layperson might reasonably assume that the cancer developed independently of prior care, particularly without specific information linking the delay to the disease's progression. Given the complaint's lack of specificity, it is plausible that Marable neither knew nor had reason to suspect a government-related cause until a later date.

At this stage, viewing the allegations in a light most favorable to the plaintiff, the complaint does not conclusively establish that Marable had actual or constructive knowledge of both her injury and its government-related cause on March 29, 2022. The United States has not met its burden to show that Marable was subjectively aware of, or that a reasonably diligent person in Marable's position would have reason to suspect, the existence of her injury and its iatrogenic cause on the date of diagnosis, particularly given the fact-intensive nature of the inquiry. Accordingly, the motion to dismiss must be denied, pending further factual development.[7]

---

[7] Although not raised by either party, the Court may need to consider whether federal claim-accrual rules, such as the continuous treatment doctrine, apply to this case. *See Alexander v. United States*, 721 F.3d 418, 422–23 (7th Cir. 2013) (noting that federal claim-accrual rules apply in FTCA suits). Under the continuous treatment doctrine, where a plaintiff receives ongoing tortious treatment, the cause of action may not accrue until the treatment ends. *Wehrman v. United States*, 830 F.2d 1480, 1483–86 (8th Cir. 1987). Further factual development may reveal that this doctrine tolls the accrual date. *But see Lefevers v. United States,* No. 03 C 1798, 2008 WL 11515071, at *3 (N.D. Ill. Jan. 15, 2008) (discussing whether the Seventh Circuit's decision in *Goodhand v. United States*, 40 F.3d 209 (7th Cir. 1994) amounts to an indirect repudiation of the continuous *treatment* doctrine, at least as articulated by the Fourth Circuit in *Otto v. Nat'l Institute of Health*, 815 F.2d 985 (4th Cir. 1987); *Espinoza v. United States,* 715 F. Supp. 207, 210–11 (N.D. Ill. 1989) (noting that the Seventh Circuit has never adopted the continuous *treatment* doctrine).

## VII.    CONCLUSION[8]

For the reasons set forth herein, the Motion to Dismiss (Doc. 9) is **DENIED**. The previously imposed stay is **LIFTED**. The United States shall answer the Complaint within twenty-one days of the entry of this Order. The trial and scheduling and discovery conference will be set by separate order.

**SO ORDERED.**

Dated: June 12, 2025

_____
DAVID W. DUGAN
United States District Judge

---

[8] Given the Court's finding as to the date of accrual, it need not address the parties' arguments pertaining to equitable tolling.